| | |
|---|---|
| **ROBIN WILLIAMS-JONES**<br><br>**Plaintiff**<br><br>v.<br><br>**CHARTER SCHOOLS USA, Inc., THE NORTH CAROLINA CHARTER EDUCATIONAL FOUNDATION, INC. d/b/a LANGTREE CHARTER ACADEMY, ANN CESENA (individually and as Agent for Charter Schools, USA, Inc.), and CHARLES NUSINOV (individually and as Agent for Charter Schools USA, Inc.),**<br><br>**Defendants** | **AMENDED COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff, Robin Williams-Jones, by and through Counsel, and pursuant to 42 U.S.C. 1981§ and 42 U.S.C. § 2000(e), *et seq.*, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 28 U.S.C. § 1343.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## PARTIES

3. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

4. Robin Williams-Jones ("Plaintiff") is an African American citizen of the State of North Carolina who currently resides in Mecklenburg County, North Carolina.

5. Robin Williams-Jones is a "person" as defined by 42 U.S.C. § 15855(a)(4)(A).

6. At all times relevant to this case, the Plaintiff was an "employee" of the Defendants pursuant to 42 U.S.C. § 2000e(f).

7. Defendant The North Carolina Charter Educational Foundation, Inc. d/b/a Langtree Charter Academy (LCA) is a business entity which regularly conducts business in North Carolina and has its corporate office at 154 Foundation Ct., Mooresville, NC 28117-9606

8. LCA can be reached for service through its Registered Agent, CT Corporation System at 160 Mine Lake Ct, Suite 200, Raleigh, North Carolina 27615-6417.

9. At all times relevant to this action LCA was engaged in commerce in North Carolina pursuant to 43 U.S.C. § 2000e(g).

10. At all times relevant to this action LCA was an "employer" pursuant to 43 U.S.C. § 2000e(b).

11. Defendant Charter Schools USA, Inc., (Charter) is a business entity which regularly conducts business in North Carolina and has its corporate office at 800 Corporate Dr, Suite 700, Fort Lauderdale, Florida, 33334.

12. Charter can be reached for service through its Registered Agent, CT Corporation System at 160 Mine Lake Ct, Suite 200, Raleigh, North Carolina 27615-6417.

13. At all times relevant to this action Charter was engaged in commerce in North Carolina pursuant to 43 U.S.C. § 2000e(g).

14. At all times relevant to this action Charter was an "employer" pursuant to 43 U.S.C. § 2000e(b).

15. At all times relevant to this action Defendant Ann Cesena (Cesena) was an "employer" pursuant to 43 U.S.C. § 2000e(b).

16. Cesena is a "person" as defined by 42 U.S.C. § 15855(a)(4)(A).

17. At all times relevant to this action Defendant Charles Nusinov (Nusinov) was an "employer" pursuant to 43 U.S.C. § 2000e(b).

2

18. Nusinov is a "person" as defined by 42 U.S.C. § 15855(a)(4)(A).

## FACTUAL ALLEGATIONS

19. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

20. In August 2016, Plaintiff was hired by LCA/Charter as LCA's first Student Counselor.

21. Her duties including directly counseling the students at LCA.

22. The Plaintiff was successful in her position at the school and was very trusted by the students she served.

23. For three years she had no disciplinary infractions or any problems in job performance.

24. In May 2019, LCA administrators planned to fire the Plaintiff and replace her with a white person.

25. On May 31, 2019, without warning the Plaintiff was unceremoniously fired from her position with the school by letter.

26. Word of her dismissal spread quickly and the outcry by students, parents, and teachers was so great that the school recalled her into its employ by Monday, June 2, 2019.

27. She was rehired to a position with LCA by Nusinov, who physically destroyed the dismissal letter given the Plaintiff on May 31.

28. The Defendants rehired the Plaintiff to placate those who openly objected to her dismissal and to create a pretext for firing her by creating false reprimands and disciplinary actions against her.

29. In June 2019, Cesena was hired as the new principal of the LCA Upper Academy and, upon information and belief, she implemented an unwritten policy to quickly remove minority employees.

30. Cesena demoted the Plaintiff from the position she had previously held to "Student Service Coordinator."

31. More importantly, the Plaintiff was humiliated to learn that the student body was instructed not to speak to her at school.

32. The Plaintiff was also moved from the office she had used since she was hired. This was a visible signal to LCA, the students and parents that the Plaintiff was being censured.

33. This caused great distress to the Plaintiff because many of the students depended on her as they had developed a trust relationship with her in her capacity as counselor, and they looked to her for advice in a very important time in their development.

34. Many students and their parents attempted to contact the Plaintiff and she was conflicted as to whether she should help the children who needed her or keep her job by following the instructions not to speak to the students.

35. Moreover, she was also given jobs to do that had nothing to do with counseling or student activities, such as monitoring the lunchroom.

36. During the students' summer break, the Defendants hired outside counselors to review the Plaintiff's work and point out ostensible errors that the Plaintiff made.

37. The outside counselors pointed out many examples of what they considered errors; however, the putative errors were either not errors, or not the fault of the Plaintiff.

38. Over the course of the year several minority employees were replaced with white employees, even though there were no performance issues with the employees who were replaced.

39. Upon information and belief, during this time Cesena made statements that if she wanted to fire an employee, she would not fire that person, but she would make their workplace so uncomfortable that they would resign.

40. Thereafter the school and faculty engaged in an intentional practice to eliminate all or most minority employees by firing them or by making their workplace environment so hostile that they would resign.
41. At the time of this complaint there is only one minority employee left in an administrative position at LCA.
42. One practice the Defendants engaged in was repeated and unnecessary criminal investigations of minority employees that were not performed on white employees. This led to the firing of another minority employee.
43. These criminal background investigations were performed by the company owned by Cesena's husband.
44. The Defendants began to stack the Plaintiff's folder with "Improvement Action Forms" (a type of disciplinary write-up), emails and other reports that were inaccurate, misleading, or facially dishonest.
45. The Defendants did this to establish the pretext of poor job performance so that they would have a legal excuse to fire the Plaintiff.
46. When the Plaintiff was hired, the Defendants were aware that she was not certified as a School Counselor, as many employees in the school system have not attained certification for various positions prior to employment.
47. However, the Plaintiff's skills were exemplary, and she was very well respected by teachers, parents, and most importantly, the students.
48. On July 27, 2019, Cesena sent an email to the Plaintiff about ostensible errors the Plaintiff made in her word and demanded that she obtain certification within approximately one year.
49. The errors that Cesena pointed out were either not errors or were not errors made by the Plaintiff.

50. In August 2019, Cesena informed the Plaintiff by email that her job description was changing, and the Plaintiff would no longer receive a stipend.

51. In her previous position as Student Counselor she was paid a yearly stipend of $12,000.

52. This stipend was no longer paid to her, though a stipend was paid to another Student Service Coordinator at LCA.

53. Master Principal Shane Lis (Lis) told the Plaintiff that he expected the removal of the stipend to cause her to resign, since it was such a large amount of her compensation package.

54. In this way, among others, the Defendants created a hostile work environment meant to remove the Plaintiff from her position at LCA.

55. On September 24, 2019, Cesena told the Plaintiff that she had approximately one year to complete certification.

56. Her new position and ambiguous duties were unlike the duties she had previously performed.

57. The Plaintiff was made an Inclusion Teacher with 8th Grade English and Math classes for 180 minutes.

58. She was then required to go to the cafeteria from 10:53-1:33.

59. She was also instructed to go to a computer class on certain days, where she was to act as a monitor.

60. The Plaintiff received instructions by email from a substitute teacher who explained how the Plaintiff was to do her job.

61. These emails were out of place and the Defendants humiliated her by having a substitute employee assert authority over her position with the Defendants' approval.

62. During most days, the Plaintiff was unable to take lunch unless she did not act as a lunch monitor in the cafeteria.

63. During this time the Plaintiff's job description continued to change at the whim of Cesena and each change was designed to keep the Plaintiff away from the students she served and who needed her guidance.

64. The Defendants were systematically pushing the Plaintiff out of her job with assignments that did not use her expertise and were meant to dishearten her and embarrass her.

65. These things were not happening to white employees of Charter/LCA.

66. At one point there was a student at LCA who was clearly a danger to himself and others, as he has Obstructive Defiant Disorder.

67. Cesena requested the Plaintiff to sit with this student to monitor him.

68. This student had stabbed a teacher with scissors, pushed another teacher during after school detention, and was a bully to other students.

69. The Plaintiff sent several emails alerting the Defendants that she was in fear for her life and did not feel comfortable being with that student who was violent and could overpower her.

70. After that student returned to school, the Plaintiff was written up for not wanting to work with the student.

71. Lis told the Plaintiff that he could not help her because she refused to comply with the order to monitor the dangerous student.

72. At that point the Plaintiff knew that her safety was in danger and that the Defendants would do almost anything to cause her to quit.

73. On October 4, 2019, the Plaintiff contacted the Equal Employment Opportunity Commission (EEOC), which assisted her in submitting a charge pursuant to anti-discrimination laws.

74. The EEOC forwarded the Charge to the Defendants' office in Florida.

75. On November 4, 5, 8, 12 and 15, 2019, the Plaintiff sent emails to the Charter corporate office.

76. In each email she asked to speak to someone about the hostile work environment and the way she was being treated.

77. Instead of the Defendants responding to her concerns, on November 18, 2019, the Defendants fired the Plaintiff again.

78. The reason given for her dismissal concerned her job performance, but these reasons were groundless and pretextual.

79. The Defendant had planned to fire the Plaintiff, or reduce her position significantly, and upon information and belief, the Defendant fired the Plaintiff in retaliation for her charge filed with the EEOC and her letters requesting help from the main office at Charter.

80. Upon information and belief, on December 18, 2019, one of the Defendants or their agent opened a parcel that was mailed to the Plaintiff through the U.S. Mail and addressed personally to the Plaintiff.

81. This appears to be a violation of 18 U.S. Code § 1708.

82. This is another example of the illegal and disrespectful conduct that the Plaintiff has had to endure at the hands of the Defendants.

## RACE DISCRIMINATION

83. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

84. Plaintiff was discriminated against by the Defendants when, solely because of her race, she was subjected to a hostile work environment, demoted and ultimately fired.

85. Plaintiff was hired for the position and, based on her success with the students, was clearly among the most qualified applicants for the position.

86. The harassment described herein was unwelcomed by the Plaintiff and she communicated this to the Defendants.

87. The harassment was based on her race, as the same treatment was not visited to employees who were not minorities and she was replaced by a person who was white.

88. The harassment was so severe that it altered the conditions of her employment and created an abusive atmosphere as described herein.

89. The employer and its agents are completely responsible for all of the acts that constituted the harassment described herein.

90. By the racially disparate actions described herein, the Defendants discriminated against the Plaintiff on the basis of her race. Similarly situated white employees were not treated in this manner.

91. The Plaintiff engaged in a protected activity; specifically, she reported harassment to the EEOC and the home office of the Defendant.

92. Her employer fired her.

93. Her firing was based on her race and the fact that she reported the discrimination to which she was subjected.

94. Defendant's actions and omissions violate 42 U.S.C. § § 1981 and 42 U.S.C. § 2000(e), *et seq*. and were undertaken willfully, wantonly, and with reckless disregard for the Plaintiff's rights, entitling her to compensatory and punitive damages.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

95. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

96. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff's EEOC charge number is 430-2019-02635 alleging race discrimination.

97. The EEOC issued a right-to-sue notice on October 4, 2019. Plaintiff is filing this action within ninety days of receipt of the right-to-sue notice. Plaintiff has complied with all jurisdictional requirements of 42 U.S.C. § 2000(e), *et seq*. and has exhausted administrative prerequisites before initiating this action.

## DAMAGES

98. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

99. As a result of the discrimination herein, Plaintiff has suffered loss of past, present and future earnings, loss of enjoyment of life, mental anguish and distress and other economic and monetary losses.

100. Plaintiff has been irrevocably injured by the discriminatory actions complained of herein. The injuries that Plaintiff suffered should be enjoined by this court. Plaintiff has no other adequate or complete remedy other than this proceeding to have actions and practices of Defendant as complained of herein remedied.

## DEMAND FOR JURY TRIAL

101. Plaintiff exercises her right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiffs respectfully request the following relief from the Court:

1. Declare the action complained of herein to be illegal;

2. Issue an injunction enjoining Defendant, its agents, its employees, successors, attorneys and those acting in concert or participation with Defendant and at its direction from engaging in

the unlawful practices set forth herein and any other employment practice shown to be in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000(e), *et seq*. ;

3. Award Plaintiff compensatory damages, including damages for mental anguish, harm to Plaintiff's economic relations and opportunities, back pay, front pay and future loss of earnings with cost of living adjustments, and interest;

4. Award Plaintiff punitive damages for the extreme and outrageous acts taken by Defendant in willfully violating federal law;

5. Award Plaintiff her costs and expenses in this action, including reasonable attorney fees, costs and other litigation expenses;

6. Award Plaintiff the position of Student Counselor or a comparable position with Defendant which she would have enjoyed but for the discriminatory acts of Defendant;

7. And for such further and relief that this Court may deem just, equitable and proper.

**TODAY** is January 10, 2020.

**COLLUM & PERRY**

By: */s/ M. Shane Perry*
M. Shane Perry
NC Bar Number: 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile: 704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*